IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JETPAY MERCHANT SERVICES, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:08-CV-1380-L** |
| | § | |
| **DAVID TEPOORTEN**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (i) Plaintiff's Motion for Partial Summary Judgment, filed April 14, 2009; and (ii) Defendant's Motion for Leave to Supplement Response to Plaintiff's Motion for Partial Summary Judgment, filed June 22, 2009. After careful consideration of the motions, briefs, responses, replies, appendices, competent summary judgment evidence, record, and applicable law, the court **grants in part** and **denies in part** Plaintiff's Motion for Partial Summary Judgment, and **denies** Defendant's Motion for Leave to Supplement Response to Plaintiff's Motion for Partial Summary Judgment.

**I.     Procedural and Factual Background**

Plaintiff JetPay Merchant Services, LLC ("JPMS") filed its original petition in state court against "John Doe," the sender of an anonymous e-mail, on January 2, 2008. After subpoenaing the records for the e-mail account, JPMS unmasked the sender as David Tepoorten ("Tepoorten"), and amended its petition to specifically name Tepoorten as the defendant. On August 8, 2008, JPMS removed this action to federal court on the bases that complete diversity of citizenship existed

between the parties and that the amount in controversy exceeded $75,000, exclusive of interests and costs.

JPMS's claim against Tepoorten is one for breach of contract. Tepoorten worked for JPMS until August 20, 2007, when he entered into a contractual agreement with JPMS and others[1] to sell off his units of ownership in the company. Def.'s App. Ex. 4. This agreement contained a nondisparagement clause that reads in relevant part:

> The parties to this Agreement agree to refrain from making any statements or comments, whether oral or written, to any person or entity, that are either intentionally false or that would tend to disparage or harm another of the parties.

Def.'s App., Ex. 4 § 3(e) at 17.

On December 22, 2007, Tepoorten sent an anonymous e-mail to Susquehanna BancShares, Inc. ("Susquehanna Bank"), which JPMS contends communicated disparaging information. The e-mail states in relevant part:

> It is a fact that Jetpay was the target of a Homeland Security department raid . . . and the Enterprise Bank fraud resulted in FBI involvement.
> . . .
> These banks terminated their sponsorship of Jetpay . . . you need to confer with them asap. [contact information omitted]
> . . .
> **Enterprise Bank terminated its sponsorship as a result of fraud** . . . contact these Enterprise Bank officers for details: [contact information omitted]

Def.'s App., Ex. 5 at 28-29.

Following an unsuccessful court-ordered mediation between the parties, JPMS filed its motion for partial summary judgment, asking this court to determine that Tepoorten's e-mail constituted a breach of the contract's nondisparagement clause. Tepoorten maintains that the

---

[1] In addition to Tepoorten and JPMS, the following nonparties also entered into the agreement: WLES, LP; Trent Voigt; Ten Lords, Ltd.; Providence Interactive Capital, LLC. Def.'s App. Ex. 4 at 22-25.

**Memorandum Opinion and Order- Page 2**

"Jetpay" referenced in his e-mail did not refer to JPMS, but rather referred to JetPay, LLC, an entity separate from JPMS that is a nonparty to this action and did not enter into the above contractual agreement. Tepoorten also contends that disparagement could not have occurred because the e-mailed statements were true as to JetPay, LLC. Finally, Tepoorten contends that granting summary judgment would be improper because JPMS has not suffered any damages from the alleged disparagement, and he has requested leave from this court to supplement his response to better support this position.

## II.   Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. <u>Analysis</u>

#### A. **Plaintiff's Motion for Partial Summary Judgment**

Under Texas law, the essential elements for a breach of contract claim are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and

(4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Tepoorten contends that JPMS's motion for partial summary judgment should be denied because damages have not been shown.

JPMS, on the other hand, argues that it is entitled to partial summary judgment as to the sole issues of breach and liability, reserving the issue of damages for trial. The court determines that a partial motion such as this, limited to the issues of breach and liability, is allowed under Rule 56(d)(2) of the Federal Rule of Civil Procedure. Of course, if JPMS ultimately fails to establish damages in this action, the law disallows JPMS any form of recovery for a breach of contract. For the purposes of JPMS's motion for partial summary judgment, however, the court will not require a showing of damages at this time.

> **1.  Breach of Contract**

The parties do not contest that their signed agreement is a valid contract. They also do not contest that the contract's nondisparagement clause is enforceable. Violation of the clause, therefore, would constitute a breach. What the parties do dispute, however, is the extent of the clause's enforceability.

> **a.  Statements Prohibited By the Nondisparagement Clause**

The clause restricts the parties from transmitting statements to others "that are either intentionally false or that would tend to disparage or harm another of the parties." Def.'s App., Ex. 4 § 3(e) at 17. Both JPMS and Tepoorten have revealed divergent understandings of the word "disparage." JPMS urges the court to adopt the plain meaning of the word, while Tepoorten insists that the word is simply redundant and requires that an element of falsity attach to any "disparaging" statements made for a breach to occur. In other words, Tepoorten would have the initial

**Memorandum Opinion and Order- Page 5**

"intentionally false" classification apply to the entire clause. JPMS, however, submits that the clause prohibits three different types of statements: those that are intentionally false, those that would "tend to disparage," and those that actually harm.[2]

The court is not persuaded by Tepoorten's position in light of the clause's grammatical syntax, which introduces the prohibited types of statements with the word "either." The word "either" necessarily suggests two possibilities. Therefore, applying a falsity element to each segment of the clause would remove any form of alternative, because it would make falsity the only relevant consideration for establishing a breach. Accordingly, the court agrees with JPMS in that "intentionally false" and "tends to disparage or harm" constitute separate types of statements that give rise to a breach under the clause. Of these two types, only the former requires falsity.

Tepoorten nevertheless relies on a 1987 Texas Supreme Court case for the proposition that disparagement claims require an element of falsity. *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987) ("The general elements of a *claim for business disparagement* are publication by the defendant of the disparaging words, *falsity*, malice, lack of privilege, and special damages.") (emphasis added). Tepoorten, however, confuses a claim for business disparagement with a claim for breach of contract, which is the only claim at issue here. Although *Hurlbut* makes clear that falsity is an essential element for a claim of business disparagement, the case says nothing about falsity being a requirement for breach of contract. Tepoorten's assertion of truth as a defense

---

[2] The court does not agree that the clause prohibits three different types of statements, but rather determines that the clause prohibits only two types of statements: "intentionally false" or "tend[ing] to disparage or [tending to] harm." The court views the language of "tends to disparage or harm" as two subparts to the same prohibition, and concludes that "actual harm" is not a specific prohibition under the clause. JPMS, however, argues only that Tepoorten's e-mail was disparaging, and thus analysis of whether it "actually harmed" is unnecessary and irrelevant because the court does not interpret the clause that way.

**Memorandum Opinion and Order- Page 6**

here seeks to characterize JPMS's claim as an action to recover for slander, libel, or other defamation. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (requiring falsity of the statement for a defamation claim concerning a private entity). JPMS has not alleged a claim here other than one for breach of contract. The court concludes that the veracity of Tepoorten's statements is therefore irrelevant as to JPMS's breach of contract claim. The sole issue here is whether Tepoorten's e-mail "disparaged" JPMS, not whether the statements made were true. The court grants JPMS's motion for partial summary judgment to the extent that Tepoorten is precluded from relying on truth as a defense in this case.

### b.     Tepoorten's E-Mail to Susquehanna Bank

JPMS contends that Tepoorten's e-mail to Susquehanna Bank is disparaging, qualifying it as a type of statement prohibited by the nondisparagement clause and constituting a breach of contract. Tepoorten responds that even if his e-mail was disparaging, it did not violate the clause because the statements it contained did not refer to JPMS, but rather referred to the separate entity and nonparty JetPay, LLC.

Tepoorten supports this position in part by submitting a sworn affidavit and a great deal of e-mail correspondence as exhibits to the court. In his affidavit,[3] Tepoorten indicates that he received a phone call in early December 2007 informing him that JetPay, LLC (an entity separate from JPMS) was in business negotiations with Susquehanna Bank, and that he "became concerned about

---

[3] JPMS objects to several paragraphs in Tepoorten's affidavit, including paragraph 8 where Tepoorten describes his state of mind after receiving the phone call about JetPay, LLC and Susquehanna Bank. JPMS contends that Tepoorten's affidavit lacks personal knowledge and therefore cannot be considered by the court. The court finds this argument unpersuasive and determines that paragraph 8 is admissible, because it describes an event of which only Tepoorten would have knowledge. It is dubious that Tepoorten would have to rely on third party information to know the way he felt after receiving a phone call. JPMS's objection to paragraph 8 of Tepoorten's affidavit is **overruled**.

**Memorandum Opinion and Order- Page 7**

the representations being made to Susquehanna Bank . . . and believed that Susquehanna Bank should know the accurate history of JetPay, LLC's sponsorship history." Def.'s App., Ex. 62 ¶ 8 at 224. Tepoorten's other exhibits, showcasing e-mail correspondence[4] from agents and employees of both JPMS and JetPay, LLC, evidence that it was common practice among them to reference JetPay, LLC as "Jetpay" (which is the abbreviation Tepoorten used in his e-mail), and to reference JPMS as "JPMS." *See* Def.'s App. Exs. 30-59.

The court finds this evidence sufficient to raise a fact question as to whom exactly Tepoorten's e-mail was referencing. JPMS argues that even if Tepoorten's e-mail to Susquehanna Bank did not specifically reference JPMS, Susquehanna Bank nevertheless perceived the e-mailed statements as referring to JPMS, therefore making Tepoorten liable for breach of the agreement. The court does not agree.

The nondisparagement clause forbids making statements that would tend to disparage "another of *the parties*." Def.'s App., Ex. 4 § 3(e) at 17 (emphasis added). It is undisputed that JetPay, LLC was not a party to the contract signed between JPMS and Tepoorten. JPMS has provided no evidence showing that JetPay, LLC and JPMS are the same entity. JPMS seems to concede that it and JetPay, LLC compose two entirely separate entities. *See* Pl.'s Reply at 6 ("[T]he most that Defendant has shown is that some people, including Tepoorten, might have construed the e-mail as referring to JetPay LLC, but that others, including Susquehanna [ ], interpreted the e-mail

---

[4]JPMS objects to all of these exhibits on hearsay and authentication grounds. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). These e-mails are not hearsay, because Tepoorten is not offering them to prove the truth of the matter asserted therein, but rather is offering them to show that agents of JPMS and JetPay, LLC commonly referenced the companies by different abbreviations. Authentication is satisfied when evidence is sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a). These e-mails are also properly authenticated, because Tepoorten has included more than enough context and distinctive characteristics of e-mails in his submissions to meet this low evidentiary standard. JPMS's objections are **overruled**.

**Memorandum Opinion and Order- Page 8**

to refer to JetPay Merchant Services."). JPMS's only rebuttal to the possibility that Tepoorten's e-mail referenced JetPay, LLC–and not JPMS–is that Susquehanna Bank interpreted the "Jetpay" reference differently than Tepoorten. The court is reticent to find a breach when a factual dispute exists as to whom Tepoorten's e-mail actually referenced, notwithstanding that Susquehanna Bank may have understood the e-mail to reference JPMS.

The court determines that whether Tepoorten's e-mail was disparaging against JPMS is a question better left for the fact-finder. JPMS's motion for partial summary judgment is denied as to the issue of breach of contract. Alternatively, JPMS requests that the court make a ruling on whether Tepoorten's e-mail qualifies as "disparaging," and reserve the question whether it was disparaging against JPMS for trial. The court finds the essence of the statements made in Tepoorten's e-mail irrelevant if it cannot first determine whom the e-mail references, as a breach occurs in the context of this lawsuit only if the statements disparage JPMS (and not JetPay, LLC). The court therefore will not decide this issue and will leave it for the trier of fact.

### 2. Objections

JPMS objects to Tepoorten's affidavit on lack of personal knowledge grounds, and also objects to the vast majority of Tepoorten's other exhibits on hearsay and authentication grounds. The court found it unnecessary to consider the objected-to exhibits in its preceding analysis, except where indicated in footnotes 3 and 4 above. To the extent the court did consider any exhibits that JPMS objected to, those objections are overruled. The court sees no need to now address any remaining objections, as the matter has already been decided on independent grounds.

### B. Defendant's Motion for Leave to Supplement Response

Tepoorten requests leave to supplement his response to JPMS's motion for partial summary judgment. He contends that his discovery with Susquehanna Bank was unjustly delayed, which prevented him from providing a more thorough argument and analysis on the damages issue to the court in his original response to JPMS's motion for partial summary judgment. JPMS opposes Tepoorten's motion, reminding the court that JPMS's motion for partial summary judgment is limited only to the issues of breach and liability, not damages. The court agrees.

The newly acquired information regarding damages with which Tepoorten would supplement the court is superfluous because JPMS only moved for partial summary judgment, not summary judgment in full. Briefing on the matter of damages is therefore unnecessary, as there is no damages issue for the court to decide. Accordingly, Tepoorten's motion for leave to supplement response is denied.

## IV. Conclusion

For the reasons herein stated, there are genuine issues of material fact as to whom exactly Tepoorten's e-mail references, and summary judgment therefore cannot be granted as to JPMS's breach of contract claim. The court does determine, however, that falsity is not a requirement for the statements contained within Tepoorten's e-mail to qualify as "disparaging." Accordingly, the court **grants** Plaintiff's Motion for Partial Summary Judgment only to the extent that it precludes Tepoorten from relying on truth as a defense in this matter and **denies** the motion in all other respects. The court also **denies** Defendant's Motion for Leave to Supplement Response to Plaintiff's Motion for Partial Summary Judgment, because further briefing on the damages issue is unnecessary.

**Memorandum Opinion and Order- Page 10**

**It is so ordered** this 23rd day of September, 2009.

                                                Sam A. Lindsay
                                                United States District Judge